I'm Tom Olive. I represent the appellants today, Dr. Sharon and Daryll Dykes. This case arises out of an adversary proceeding in a bankruptcy case where the bankruptcy court after trial denied my client's discharge on two grounds. I'm unclear when the discharge trial took place in relation to the administration of the estate. Okay. Particularly whether the discharge plan had been resolved. Well, we can go into that. The case was filed in the summer of 2016. I don't care about dates. Was there a final Chapter 7 plan in place at the time of the discharge trial as I would have suspected? Well, the trustee had been administering assets throughout and in fact was administering assets before and after the trial if that's the question. I guess I'm not, I apologize, I'm not understanding the court's question here. Well, it strikes me that the reason that the trustee's greatest interest in the watches, what was returned and what were they worth and so forth, the watch's record keeping would have been to protect both Beluso and its claim but other creditors from a false or exaggerated claim by Beluso. Did they know the answer to that when the discharge trial occurred? I don't know that there was an answer. The Beluso claim was, arose from a confession of judgment signed between Beluso and my client Darrell. But he filed a claim, right? For what, $300,000? They filed a claim for $400,000 and then subsequently before trial amended that claim to reduce it by I think $120,000. It's in the record. Yeah. And I don't know what happened with regard to that. That wasn't part of the administration. If in fact the debtors had returned $350,000 worth of watches to Beluso as a judgment creditor, that would have reduced its claim in bankruptcy, right? Yes, I think so. So that's a heck of a good reason for the trustee to want accurate record keeping with respect to that transaction. The case trustee never asked us for that information. All of the dealing. That's what this is all about. The fact that there was a list of watches returned but there was no value and then it was inconsistent with the list of watches. I'm just going from what I got out of the briefs. Sure. But it was front and center in the administration of the, not only the administration of the assets in the estate, but the protection of creditors vis-a-vis the claims against the estate. The case trustee never inquired into that, never asked us of that, and never looked into that. What was the status of the claims against the estate when the discharge trial took place? They were still open. The trustee had not, the case trustee had not gotten to that point in the administration of the case to look at the claims. The case trustee was still gathering assets, collecting funds, and administering the case from that standpoint. Typically the case trustee will look at the claims after all the assets are in and then do claims litigation and claims adjustment at that point. That had not occurred. If that's the court's question, I want to answer that as directly as possible. That had not occurred or process started at the time of the trial, which was I believe December of 2017, about a year and a half after the filing of the case. Okay. So that was, the two issues that the court ruled on were, one, and there were three case trustees complaint that we tried. One of the counts the court didn't get to, I just said it wasn't that, I think, no, that one of the counts was dismissed because one of the counts was whether payments of tuition to the debtors for the benefit of, yeah, I know, I just, I understand. As I understand it, unless you, unless you get us to reverse A3, we don't have to consider A4 and A5. That's correct. And there, well, there's two counts that the court ruled on. One was that there were records that were unaccounted, unaccounted watches and so forth. The other was the claim that the debtors schedules were falsely signed and filed. And those are the two issues we're here to address today, right on point. On the first issue. I thought that the bankruptcy judge also said A4A, false oath way of, regarding the failure, previous failure to disclose transfers to children, was one of the, one of the three bases to deny a discharge. No, that was when I was addressing, Your Honor, the court dismissed that claim saying there was no intent to hinder, delay, or defraud creditors in that transaction. That was A2A. Yes. I'm talking about the A4A. Well, the only two counts the court found on was the adequacy of the records and the false financial statements by filing schedules that originally did not include transfers to children. Let's talk about A3. Yeah, let's talk about A3. On A3, the U.S. trustee's complaint pled that the receipt received by my clients from Belluccio when they returned or delivered, I don't know that return is the correct terminology, they were on the verge of being levied by a judgment creditor, they delivered the watches that the remaining watches they had in their possession to the attorney for Belluccio and got a receipt. The receipt didn't contain values because they felt it was irrelevant. The receipt gave a descriptive itemization of each watch returned to Belluccio figuring the judgment creditor would liquidate them and then under state law would credit the judgment for that amount. That was what was pled. What the court found was, the court went all the way back 10 years and found that transactions occurring from 4 to 10 years prior to the bankruptcy filing that the clients, my clients, the debtors, did not have adequate books and records showing what happened to watches. Now the background is in the briefing. I'll just touch on it for purposes of argument. The background is my clients were doing very well. The husband, Dr. Dykes, was a surgeon. Dr. Sharon Dykes, a doctor, they were making estimated a million dollars a year in the late 2000s. Then a series of events occurred that basically left them destitute by 2012. Bad investments, bad advice, bad decisions. The end result is they pretty much lost everything, including when the transaction that was the catalyst for everything, a bad investment in a house where the bank foreclosed, got a deficiency judgment. They levied on his medical practice. He lost his medical practice. He lost the house to foreclosure. They took everything in 2011-2012, put in a series of storage lockers, including a lot of records, various things. They couldn't make the payments on the storage locker and they lost it. If you've ever seen storage wards on TV that somebody bid in and bought everything. And so they didn't have those records. Dr. Dykes did testify at trial as to what happened. The court, using something that was kind of disturbing to us, a document that had never been admitted to trial and citing it in the order, used that to find that Dr. Dykes' testimony lacked credibility and therefore didn't consider a lot of his testimony as to what happened to the watches and eventually ruled that the record keeping from four to ten years ago was inadequate and was the grounds for the denial of discharge. What document were you referring to that they admitted that she relied on that was not admitted? It was Exhibit 19. It's referenced in the transcript, I believe pages four and five. Trial attorney for the U.S. trustee and I stipulated to the entry of numerous exhibits and the electronic docket at the bankruptcy court, we pre-submit anything we want to maybe introduce. And it was in the electronic exhibits given to the court but it was never admitted. It was an affidavit from a storage, one of the persons who purportedly bought one of the storage lockers describing contents and various things. And we wanted the opportunity to cross-examine because we think the guy may have gotten a lot of watches, didn't report him for tax purposes, and we wanted to cross-examine. We couldn't so it wasn't admitted. And counsel and I actually agreed to the inadmissibility. Court cited that the only information in the entire record that would support some of the judge's findings on credibility all would have come from that affidavit that's cited in our materials. So counsel what about the trial testimony about the watch boxes? It seems to me that that goes to the credibility of the testimony. As I understand it at trial there was an admission made that the watch boxes were either damaged in a basement flood or placed in storage and yet later on the claim was made that they didn't keep the boxes. I think that's consistent. The storage, the testimony was that the storage boxes were put in the storage lockers or the storage containers that were lost at the, when they lost the storage to foreclosure. And the references to that they were in there are all out of that affidavit that wasn't admitted at trial. So all of those, that proves the point. All of those references are from an inadmissibility document that wasn't admitted. If the bankruptcy judge's credibility finding is correct and we uphold it on appeal for some of the reasons stated here, does your client, do your clients lose? Or is there another path? There's another path. The path is the case law. We were unable to locate any cases that a court utilized transactions and lack of records from prior to three to four years prior to the filing of bankruptcy. Here we're going back almost 10 years and claiming lack of adequate documentation. So the question is, what's the reasonableness of that finding? I mean, how far back do people have to keep records and keep in mind that the court found that Dr. Sharon Dyke's testimony was credible and she testified to a lot of the same facts, including the loss of the storage locker? Well, can't we rely on the fact, even assuming we don't rely on the earlier records or lack thereof, can we rely on the fact that I recall it was like a one-page receipt between the jeweler and between the Dykes that didn't list value, didn't list any of the things. That's a pretty sort of wanting to satisfy their own claims against the estate. And so isn't that a problem? Can't we just affirm based on that ground alone? No. I mean, I understand if that was an arm's length transaction, we were negotiating it. This was a judgment creditor who was levying on assets and to avoid them showing up my client's work, he's a doctor, he voluntarily went to the lawyer's office, says, here's all the watches I have. You take them. Oh, by the way, can I get a receipt? And he got a receipt. He got something showing what he gave him. There's no dispute that's what he gave him. As far as values, values are whatever they would sell it for credit against the judgment. He didn't know at the time there wasn't time. So I don't think so, and that's the best I can answer that. Okay. I'm into my rebuttal time now. I'm 245. On the storage, it strikes me that the the bailey would only have a the bailey that seizes them for non-payment of rent would only have a would only could only the pros any proceeds above the rent owing belong to the bailor, right? In theory, if someone bids in more than the amount of the rental claim. So that if the if the boxes contained all of these items of value or records that were essential to ongoing business or the bank defending the claims in bankruptcy, why wouldn't a bailor of sophisticated, a bailor of the dykes of sophistication want to have an inventory of what was there before the seizure and by the bailey and for non-payment of rent? None of this makes sense. The only thing that makes sense to me, frankly, is they went in there and got anything of value out of them before and that that was therefore they didn't have to keep paying rent and the seizure of the storage lockers for non-payment of rent didn't matter to them. The quick answer to the question is number one, once they're a month or so behind the debtor is blocked out without if they can't pay it up. Number two, he didn't have the ten thousand dollars to pay it up. Number three, the private sale provisions don't require an inventory on part of the storage company and the people who buy it and there's I think a 10-day redemption period after that which and this all occurred back in 2012. He didn't have those opportunities because he had no income. He would bounce out of his house, was in a rental apartment, had lost his medical practice at the time. Those are all issues of credibility of course. Well, Sharon testified to the same thing and the court specifically found that she was credible. So the only thing I think that... Did the bailey testify? Bailey wasn't at trial because we didn't know any of that was that issue and that goes to the fact that some of this stuff was outside the pleadings and wasn't pled and they were trying to and that's dealt with in the briefs. Okay, so after the adverse decision by the bankruptcy judge, did you go racing back in and say all of these things are unfair and wrong and we need reconsideration and a reopening of the trial or whatever? No, we had 14 days to appeal and we used that route to the bankruptcy trial. A losing party who thinks the procedure process has been unfair, you can run to the appellate tribunal or you can go back to the trial tribunal and say this wasn't fair and get a ruling on that and then take your appeal. Yes, Sharon, in retrospect we went the bankruptcy court route just to answer your question honestly. Okay. Okay, any other questions? That's the record, you know. I know. You were stuck with the record. I got you. A lot of things I didn't address, they're addressed in the briefs. Thank you for your time this morning. Thank you. Ms. Levine. May I please the court and counsel, Beth Levine with the Department of Justice for the United States trustee. Your Honor, the court should affirm the bankruptcy court's denial of discharge to the debtors in this case because the record fully supports the bankruptcy court's findings that the Dykes' did not comply with their statutory obligations of disclosure. The privilege of discharge is contingent on debtors complying with those statutory obligations of complete disclosure and transparency and that is absolutely fundamental to the working of the bankruptcy system. The creditors, the case trustee at the court. It's also the remedy of last resort, non-discharge. It may be, Your Honor, but. As to why, as to the timing of the of the discharge trial. Your Honor, I think that there's under the bankruptcy code there is a deadline to file these kinds of complaints and so that the timing was based on that deadline. It's a statutory deadline. We did get it extended a couple of times and then we filed. But usually the discharge decision is made after the estate has been, I want to say, wrapped up. I wasn't a bankruptcy practitioner. Your Honor, that is when the discharge applies but under the code there's a deadline for filing the complaint for denial of discharge which is. But you file a timely complaint. That doesn't mean it gets tried before before issues that would be that were pretty seems pretty significant to the adequacy of the record keeping get worked out. Your Honor, this was the time for the adequacy of the record keeping and Your Honor, the bankruptcy code requires that is to come to the table at the time of the petition with adequate records and it it's specifically designed so that, for example, the case trustee. But what what records were adequate, essential in vis-a-vis the dealings with the with the with Beluso, if I'm pronouncing it right. How do you how do you know them the materiality of the lack of record keeping until you've worked through the Beluso claim? Your Honor, that under the law. I say you, I mean every the both the trustee and the and the bankruptcy judge. Your Honor, the way that the Chapter 7 trustee has to work through the claim and this is why it's so important that there are adequate records is to get those records to determine whether there's a basis to challenge a proof of claim. That's one of the reasons why the code requires debtors to have adequate records. What did you do vis-a-vis the the claimant regarding record keeping before you file an adversary proceeding to block discharge because because the debtors didn't have the records? The claimant meaning Beluso, Your Honor? Yeah. Your Honor. That'd be the first place I'd go if I was suspicious of the claim and it seems like there's so just to distinguish the Chapter 7 case trustee at some point did take seek discovery from Beluso but as the United States trustee our obligation is to make sure that debtors comply with the code and that didn't happen here. The code requires them to have adequate records and it's a very important requirement along with the requirements of honesty, not making fraudulent statements, of having a satisfactory explanation for loss of assets all of which were independent bases for denial of discharge. Who is the case trustee? The Chapter 7 trustee is, I'm not sure I'm going to pronounce her her name right, Manny Jo Monteers. I think I'm getting that slightly wrong. So the case trustee is the person who's in charge of making sure she gets together all of the assets available so they can be liquidated for the payment of the creditors and distribution to the creditors. So in order to do that she needs to have the information of what assets exist, what financial transactions occur to determine if there's anything that can be recovered for the estate, and any information that would suggest that a proof of claim should be challenged and that's why the code requires debtors to come to the table with this information. They're supposed to have this information when they file their petition and it's specifically designed so the Chapter 7 trustee should not have to and the law is that the Chapter 7 trustee and the creditors in the court do not have to spend resources investigating this. It shouldn't be like pulling teeth and of course that's important too because the Chapter 7 trustee, the more resources she needs to use, those are resources that are then not available to creditors. Why do the earlier records matter? I understand the records between the jeweler and the debtors but why do we care about the ones that are three to eight years earlier? Your Honor, so just to be clear on the timing, so of course the one record is the return of the 27 watches and that three plus carat diamond ring to the jeweler and that was in 2013. That record was inadequate for the reasons found by the Bankruptcy Court and that alone is sufficient to affirm. So in a sense maybe you don't care because you don't need to reach the issue but the court cares and the creditors care because the fact is while we see when the purchases were made, the question isn't the purchase, the question is the disposition. What happened to the watches? And that's where there's a lack of record and so for example the Bozzelli case rejected the argument the debtors are making here. What did you just refer to a case? Yes, I'm sorry, it's the Bozzelli case, excuse me, it's a Bankruptcy Court decision from Pennsylvania and it's cited in our briefs and that had some similar facts in a number of ways but it also talked about the fact that when you're talking about timing, when you don't know when the transaction happened because of the happened too far back in time. What kind of records were you looking for? I mean obviously a receipt for the sale of the watches to the debtors would not be very helpful because you're talking about the disposition of the watches. So do they have to have an inventory and specific records of when each watch was sold? I mean what exactly were you looking for I guess? Sure your honor and the invoices in this case included invoices that showed when some things were returned to the jeweler and so that would be one example of the kind of record. Another record could potentially be you know FedEx receipts showing the shipping of watches back. The records could be any number of things but the problem is here there was zero record at all. You're just left to wonder what happened to these watches and it's worth noting that for example Dr. Dykes testified that he returned it in the same way but actually in the record there is a receipt for that $107,000 watch and it shows it was shipped via FedEx, insured. And so when you talk about credibility there are many bases why the bankruptcy court found Dr. Dykes not credible including... You're going was you know is an example of why discharge be denied? Your honor that's an example of where you would expect a reasonable person in possession of something of that high of value. An ordinary reasonable person would want to have some record if what Dr. Dykes says is he gave it back to the jeweler to have some record to show that he actually doesn't have that anymore. Was that one of the five or is this? It was so there were five watches that were shown as being paid for and this was another watch at issue. It wasn't stamped paid for but there is a receipt showing he possessed it. $107,000 watch. I'm sorry I couldn't quite catch your question. Stick with the $107,000 watch. What record was there? There was a record that he received the watch via Federal Express. There was no record at all of what happened after it. He claimed in testimony that he returned it the same way he got it but adequate records means a record not just the debtor's testimony and there was no record at all of the disposition of that watch or the five watches where there were seats showing that he fully paid for those watches. And Your Honor, I would like to touch on a few other issues if you're ready for me to move on. As the court has pointed out earlier, there were three legal bases for the Bankruptcy Court's denial of discharge. One of them was the lack of adequate records under 727A3 and that was based both on these returns to Beluso. It was based on the lack of records regarding these watches as well as the lack of record regarding what happened to the hundreds of thousands of dollars worth of property put in storage. Now why shouldn't, if we have to reach A4 and A5, why shouldn't we remand so the BAP can do that first? Your Honor, this court basically stands in the same position that BAP stood in. I know that but we don't have their greater depth of experience with these kinds of issues. Your Honor, I don't think there's any reason to remand because the records fully supports the Bankruptcy Court's decision. It is a clear error deferential standard review regarding findings of fact and under subsection A4, which is worth noting there's no pleading challenge on that knowingly made false statements with reckless indifference to the truth because there was a substantial amount of transfers to or on behalf of their adult children that they didn't disclose and that finding is fully supported by the record. This court is completely capable of seeing that. There's no reason for a remand. But the question didn't say in the ordinary course or something like that and they testified, hey I've been doing this for years. I thought this was in the ordinary course of what I would normally do. And as the Bankruptcy Court found, Your Honor, there's absolutely no evidence for why if they were ordinary course, they still shouldn't have been disclosed. The complaint here was not they didn't disclose this in response to question 18. The complaint here is they didn't disclose this and the schedules in the Statement of Financial Affairs state repeatedly that they require complete and accurate disclosure. The schedules ask for, among other things, payments made to or on behalf of insiders, which are defined as relatives. Now we get into the discretionary aspect of denying discharge. Sure, I know, I've read the schedules in the past and they say clear and you know and they've got the thing at the bottom and threatening you with perjury and everything else. But at some, there are errors that warrant a denial of discharge and there are mistakes that, corrected mistakes, that don't. Your Honor. I think I'd like to have the BAP with a comparative basis of a history of group of discharge denials and non-denials. Talk about, give me some help on the discretionary of was this serious enough for the death penalty. Your Honor, it is a deferential standard of review and this was based on the court's findings of fact, which were not clearly honest because they were supported by the record. The failure to disclose this was incompatible with their knowledge. They knew they were making these payments. They continued to make these payments post-petition but didn't disclose any educational expenses. Your Honor, so there's no reason to remand for a finding that under a deferential standard of review, the record supports the bankruptcy court's finding of fact, which included that there was no evidence as to why even if these payments were an ordinary course, there was a reason not to disclose them. They were plainly affairs but they weren't disclosed. Your Honor, I also wanted to respond to the argument regarding credibility because I know that the court had some questions on that and the bankruptcy court based its credibility finding on not just this one statement regarding what happened with the watch boxes. It's clear from the court's decision and it's stated expressly that the court found Dr. Dykes not credible because of his demeanor, because of inconsistencies in what he was saying and there was other evidence admitted that the boxes went into storage. It's not really clear why Dykes has jumped to the conclusion that the court was referring to something that was not why does his credibility matter? Your Honor, I think you're right that with respect to the adequate records and the inadequacy of the records, the credibility doesn't matter on the A3 claim. Then why did the bankruptcy court feel a need to make a credibility finding? Your Honor, I think the bankruptcy court made the credibility finding because A3 was not the only claim in the case and the court was making findings of fact and in the process of finding A2A finding was consistent with a positive finding of credibility. For evidence of intent to defraud with respect to the transfer to kids that you say that the A4A clearly requires without regard to discretion the dial of discharge. Your Honor, there's a difference between the A2 claim and the A4 claim. Of course there is. One requires intent and the other just is a you know did you do it or did did you not not do it. But also there's a difference in terms of the timing with respect to with respect to the intent and the court found that the court. Well, you don't need to go on but I just think I think this the credit the credibility finding suggests that there was a lot of discretion being exercised here. Your Honor, the credibility finding is fully supported by the record. The only part they challenge is respect to what happened to the watch boxes but there was evidence consistent with what the court said that the boxes were put in storage and what happened with the boxes was really not material to any of the bases for denial of discharge. What? What happened to the again? What happened to the watch boxes was not material to the basis for denial of discharge. No, no, the watch boxes. That was what the testimony was about. That is the focus of this credibility issue that the debtors had raised. David is by the person that bought the storage boxes, right? Who said there were no watch boxes in it or? I believe so but the credibility statement that the bankruptcy court made had to do with the credibility of a statement about what happened to the watch boxes. Based on the purchaser of the storage boxes saying they weren't in there. Well, that's the inference. That's the assumption that the debtors are making. We don't think that's warranted because Dr. Dykes also testified at trial that he put the boxes in storage and the Dykes has put that in their post-trial brief that's in the supplemental appendix at 73. So that was not the only document that made that statement. Well, the issue is whether he got them out before the boxes were sold by the Bailey. Your Honor, what happened to the watch boxes though isn't material to. If they had watches in them, it is. Dr. Dykes testified that he didn't keep the watches and the boxes together, Your Honor. If there are no further questions, Your Honors, we ask the court to affirm. Thank you. Time for a vote. Mr. Olive, do you have time for a rebuttal? And I'll make it extremely quick. I have three points. All of the things asked by the court, responded to by Ms. Levine matters because number one, as far as the administration of the estate, the case trustee never testified. There was no evidence in the record that anything the debtors did interfered with her administration of the assets of the case or created any inconvenience whatsoever. There was no evidence in the record. She didn't testify. Number two, there was no evidence introduced by the U.S. trustee as to what records would be reasonable under the circumstance. We cite cases... Counselor, let me ask you a question about that. The bankruptcy court seemed to spend a lot of emphasis on the fact that your clients were sophisticated. They were highly educated. They were doctors. Is the standard for what's a reasonable record a sliding scale or is it an objective standard? It can be a sliding scale based on their sophistication, but my client was Dr. Daryl Dykes is a surgeon. Sharon Dykes is a doctor. As I know from my practice and working with a lot of business people, that doesn't make them good business people or have any knowledge of record keeping whatsoever. They're good at what they do, but there was no evidence that they were good at other things. Just as an aside, Dr. Daryl Dykes ultimately went to law school, but he graduated in 2014. He went because, as the evidence in the case shows, he's a consultant advisor on health policy issues in Washington, and that was the focus of his studies. It had nothing to do with anything in the case, so I hope that's responsive. My third point and final point is on the disclosure, the schedules that were filed. They were filed at the time of the case. The 341 was in September of 2016. Immediately when the case trustee, and this is in the record, asked about the student transfers, the money, they said, yeah, we did. We thought it was in the ordinary course. Trustees said, can you provide a record of it? They provided a record. They provided a record to the U.S. trustee. That record was attached to their complaint. All the information that was the basis of this case was provided before the adversary proceeding was filed. Granted, the clients didn't file an amended schedule until February 1, but the disclosures had been occurring since September, and the testimony was also that emails were sent to the U.S. trustee outlining everything in December of 2016, long before the adversary proceeded. May I ask one follow-up question, which is a lot of what we've been talking about here is even if the grounds have been satisfied, why deny discharge? But I didn't see you make an abusive discretion argument that says, you know, even if one of these grounds is satisfied, they still shouldn't have denied a discharge. Am I right about that? Is this all about whether A3, A4, and A5 apply, or do you have – okay. Thank you. Thank you. Thank you.